IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

FREDERICK ONWUMBIKO,

    Plaintiff,

        v.                                                   Civil Action No. 8:12-cv-01733-AW

JP MORGAN CHASE BANK, N.A. et al.,

    Defendants.

## MEMORANDUM OPINION

Pro se Plaintiff Frederick Onwumbiko brings this action against the following Defendants: (1) JP Morgan Chase Bank, N.A.; (2) Green Tree Servicing, LLC; and (3) Pinta Green Tree Servicing, LLC. Pending before the Court are three Motions to Dismiss. The Court has reviewed the record and deems no hearing necessary. For the reasons articulated herein, except as otherwise indicated, the Court **GRANTS** the pending Motions to Dismiss.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Although Plaintiff originally filed this case in state court, it has since been removed. Plaintiff has lodged a Second Amended Complaint (Complaint). Doc. No. 10. Despite running for eighteen pages, the Complaint contains vague, meandering, and conclusory allegations sounding in mortgage fraud. Unless otherwise indicated, the Court assumes the truth of these allegations for the purpose of ruling on the pending Motions.

In November 2005, former defendant Ausherman Homes (Ausherman)[1] advertised townhomes in a subdivision in Frederick, Maryland. Ausherman stated that the townhouse in question had a value of $430,550. Plaintiff bought the townhouse for the advertised price on

---

[1] Ausherman Homes has been dismissed from the case.

November 17, 2005. Former defendant Long Beach Mortgage Company (Long Beach) "was holder of the first and second trust" on the property. Doc. No. 10 at 4. Plaintiff alleges that, because the value of the home started to decline, he started to mitigate his losses by stopping payment. That is, in Plaintiff's words, "Long Beach and Ausherman procured a false appraisal and gave a mortgage loan to Plaintiff to induce him [sic] buy a new home with a negative equity." *Id.* at 5–6. The property went into foreclosure and, in February 2007, was sold for $330,900.

Plaintiff alleges that, at some later time, Long Beach and Washington Mutual Bank, predecessor-in-interest to Defendant JP Morgan Chase Bank, N.A. (JP Morgan), merged. Plaintiff further alleges that, at some later time, JP Morgan's interest in the property was assigned to Defendant Green Tree Servicing, LLC (Green Tree). Plaintiff states that Green Tree and Defendant Pinta Green Tree Servicing, LLC (Pinta) are the same entity.[2]

Plaintiff makes several other loosely connected allegations that purport to show that Ausherman and Long Beach defrauded him. For instance, Plaintiff alleges that Ausherman used Long Beach as its primary, if not exclusive, lender for the subdivision in question, providing it with offices to facilitate the alleged fraud. Plaintiff also alleges that Long Beach failed to use its "gatekeeper function of appraisal" to scrutinize the value of the property and, instead, charged him a "murderous" interest rate of 13%. *Id.* at 9. Similarly, Plaintiff vaguely states that Long Beach charged him "false and padded fees." *Id.* at 10.

Plaintiff primarily devotes the remainder of the Complaint to discussing the subprime mortgage crisis. Plaintiff avers that Long Beach engaged in the same allegedly abusive practices that engendered said crisis. Plaintiff also avers that Long Beach targeted him and allegedly similarly situated demographics such as Latinos and women based on their relatively high level

---

[2] The Court collectively refers to these Defendants as "Green Tree."

of financial risk. Plaintiff adds that JP Morgan and Green Tree should incur liability as successors-in-interest to Ausherman and Long Beach.

Based on these allegations, Plaintiff asserts claims for common law fraud, violation of the Maryland Consumer Protection Act (MCPA), and “fair lending violations.” Plaintiff spreads these claims over five counts. Under each count, Plaintiff requests damages in the amount of 2.5 million dollars.

The case was removed on April 13, 2012. Ausherman filed a Motion to Dismiss in the state court proceeding that was docketed when the case was removed. Doc. No. 7. As Ausherman has since been dismissed, this Motion is moot. Subsequently, JP Morgan and Green Tree moved to dismiss. Doc. Nos. 17, 25.

## II. STANDARD OF REVIEW

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the plaintiff’s complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 “requires a ‘showing,’ rather than a blanket assertion, of entitlement to relief.” *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least “enough facts to state a claim to relief that is plausible on its face.” *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. “When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.” *Id.* at 1950. In so doing,

the court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### III.   LEGAL ANALYSIS

#### A.   Motion to Dismiss of JP Morgan

JP Morgan makes three arguments in its Motion to Dismiss: (1) Plaintiff's fraud claims are time-barred; (2) JP Morgan cannot incur liability for the actions of Washington Mutual, its predecessor-in-interest; and (3) Plaintiff has failed to plead his fraud claims with particularity.

The Court agrees with these arguments. As for the statute of limitations argument, Plaintiff alleges that he signed his home note in November 2005 and that he lost the house in a foreclosure sale in February 2007. Therefore, under the discovery rule, Plaintiff's cause of action accrued absolutely no later than February 2007. Yet the docket reflects that Plaintiff did not bring his state court action until December 2011, nearly five—and quite plausibly seven—years after his cause of action accrued. Therefore, under Maryland's three-year statute of limitations, Plaintiff's fraud claims are time-barred. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101.

Plaintiff responds that Maryland's 12-year statute of limitations applies to his fraud claims because the deed of trust was executed under seal. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-102(a). JP Morgan appears to concede that the deed of trust was executed under seal.

However, § 5-102(a) applies to actions "on" a promissory note, contract, or other similar

instrument under seal. *See id.* Therefore, in determining whether § 5-102(a)'s 12-year limitations period applies, courts must consider (1) whether the contract is a specialty and (2) whether the cause of action is "on" the speciality. *See Wellington Co., Inc. Profit Shar. Plan and Trust v. Shakiba*, 952 A.2d 328, 344 (Md. Ct. Spec. App. 2008). "[T]o be within the statute relating to sealed instruments, the action must be brought on the instrument itself . . . ." *Id.* at 343 (citation omitted).

In this case, Plaintiff has not asserted his action on the deed of trust in question. Rather, Plaintiff's fraud, consumer protection, and fair lending claims are almost entirely based on allegations of false advertising and conspiratorial conduct that is extraneous to the deed of trust. Additionally, although Plaintiff vaguely alleges that Long Beach charged him excessively high interest and fees, Plaintiff's prayer for damages in the exorbitant amount of $2.5 million per count indicates that his causes of action are not on the instrument. In short, Plaintiff does not seek to reform the deed of trust and has failed to allege in sufficient detail what aspect of it underlines his fraud claims. Accordingly, § 5-102(a) is inapplicable and Plaintiff's fraud claims are time-barred.

Second, Plaintiff's claims against JP Morgan are not cognizable because they are based on a theory of assignee liability. Plaintiff alleges that Ausherman and Long Beach engaged in fraud and that, as successor-in-interest to Long Beach, JP Morgan is responsible for the former's fraud. However, as this Court has held, "it is undisputable that Maryland common law rejects implied assignee liability." *Brown v. Bank of Am., N.A.*, Civil Action No. AW–10–cv–1661, 2012 WL 380145, at *4 (D. Md. Feb. 3, 2012) (citations omitted); *see also Holliday v. Holliday*, Civil Action No. 09–cv–01449–AW, 2012 WL 1409527, at * 9–10 (D. Md. April 20, 2012).

Plaintiff has simply alleged no basis for imputing Long Beach's and/or Ausherman's alleged liability to JP Morgan.

Moreover, Plaintiff has failed to plead his fraud claims with particularity. *See* Fed. R. Civ. P. 9(b); *see also Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557, 569 (D. Md. 2012) (citations omitted) (noting that MCPA claims are subject to the heightened pleading requirements of Rule 9(b)). Here, to reiterate, Plaintiff alleges that he was lured into buying a house with an artificially high value and preyed upon as a high-risk borrower. However, Plaintiff fails to allege the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby for both the fraud and MCPA claims." *Id.* (citation and internal quotation marks omitted).

Indeed, Plaintiff's claims would fail even if Rule 9(b)'s heightened pleading standard did not apply to his claims. In sum, the claims are vague and conclusory and, in some instances, not even entitled to the assumption of truth. For instance, Plaintiff alleges that, because the value of the home started to decline, he started to mitigate his losses by stopping payment. However, even construing this allegation in the most lenient light, it is unclear how this measure was a natural or appropriate response to the alleged loss of value of his home and deceptive advertising and pricing practices. Rather, even taken as true and construed favorably, Plaintiff's allegations lead ineluctably to the inference that he simply could not make his monthly mortgage payment and stopped paying it.

Plaintiff also makes out what purports to be a "fair lending violation" claim. But the only fair lending law that Plaintiff specifically contends JP Morgan violated is RESPA. However, Plaintiff's allegations are too vague to support a RESPA violation. Furthermore, as this Court has held, RESPA does not provide a private right of action in many instances. *See Holliday*, 2012

WL 1409527, at *10. Additionally, Plaintiff's RESPA claim is time-barred because RESPA generally follows a one- or three-year statute of limitations depending on the claim asserted. *See* 12 U.S.C. § 2614. Here, the cause of action would have accrued absolutely no later than 2007 and, hence, Plaintiff's RESPA claim is time-barred.

Plaintiff's purported fair lending claims would fail even if the Court construed them as alleged violations of TILA, RICO, the Fair Credit Reporting Act (FCRA), and/or the Fair Debt Practices Act. All of these claims would be time-barred. *See Pitkin v. Ocwen Fin. Corp. et al.*, 8:12-cv-00573-AW (D. Md. 2012), Doc. No. 40 at 6 (stating the statute of limitations for such claims). Moreover, as indicated, Plaintiff's fair lending claims are not facially plausible. For good measure, any TILA rescission claim would fail because Plaintiff has not alleged he has the ability to repay the loan that he voluntarily took out, even if the loan were for the allegedly true value of the property. *See Holliday*, 2012 WL 1409527, at *10 (citation omitted) (citing *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 820–21 (4th Cir. 2007)).

For the foregoing reasons, the Court dismisses Plaintiff's claims against JP Morgan. This dismissal is with prejudice. Having filed a Second Amended Complaint, Plaintiff has had ample opportunity to flesh out the factual underpinning of his claims. Yet, as the above analysis illustrates, Plaintiff's claims are incurably deficient in several respects.

**B.     Motion to Dismiss of Green Tree**

Green Tree raises essentially the same arguments as JP Morgan, and Plaintiff's allegations against Green Tree are essentially the same as his allegations against JP Morgan. Therefore, the Court incorporates its analysis from Part III.A and dismisses Plaintiff's claims against Green Tree with prejudice.

## IV.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** JP Morgan's Motion to Dismiss, **GRANTS** Green Tree's Motion to Dismiss, and **DENIES AS MOOT** Ausherman's Motion to Dismiss.

|  November 30, 2012  | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |